96 So.2d 821

Morris **BAKER**

v.

**STATE.**

**5 Div. 506.**

Court of Appeals of Alabama.

Aug. 27, 1957.

David H. Hood, Jr., Bessemer, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant had been convicted in the County Court of Randolph County on a charge of indecent exposure. From this conviction he perfected his appeal to the circuit court.

There was also pending against this appellant an indictment charging him with indecent exposure.

In the solicitor's complaint filed in circuit court, and in the indictment, it was charged that the appellant within twelve months before "did unlawfully expose or exhibit his sexual organs or private parts in a vulgar and indecent manner on a public road in Randolph County, Alabama, contrary to law", etc.

Section 326(1), Title 14, Code 1940 provides:

"It is unlawful for any person to expose or exhibit, or to procure another to expose or exhibit, his sexual organs or private parts in any public place or on the private premises of another, or so near thereto so as to be seen from such private premises, in a vulgar and indecent manner."

The complaint and the indictment followed the wording of the statute, supra, and were entirely sufficient to inform the appellant of the offense with which he was charged. The court therefore correctly overruled the demurrers filed to each charging document.

A jury being waived, trial below was had before the court.

Also, by agreement, the two charges were consolidated for trial, separate judgments to be entered for each case.

At the conclusion of the hearing the lower court entered a judgment of guilty in each case, and this appeal is from such judgments.

Mrs. Cleola Meadows, for the State, testified that on the 6th, 9th, and 11th of April 1956 she was driving along a road in Randolph County on her way to work. At approximately ten minutes to six on each morning, as she passed appellant's place, he would be standing nine or ten feet from the asphalt portion of the road with his private parts exposed.

After the second instance the matter was reported to the sheriff who instructed Mrs. Meadows to particularly notice the man should there be another occurrence.

The sheriff testified that after the third occurrence he went to appellant's home for the purpose of placing him under arrest. The appellant asked, "For what?", and stated he had seen another colored man, named Menefield, in the road that morning. The sheriff, accompanied by the appellant, went to Menefield's home. Menefield agreed to accompany them to Mrs. Meadows's home for identification purposes. At the home of Mrs. Meadows a porch light was turned on, and the appellant and Menefield stood on the porch. Mrs. Meadows

identified the appellant as being the man she had seen on the roadside.

Mrs. Meadows rode with the sheriff and pointed out to him the spot where the appellant had stood on the occasions in question. The sheriff testified that in his judgment this spot was on the public right of way of the road.

The County Engineer for Randolph County testified that at this point the right of way extends for forty feet on each side of the center line of the highway, and that the asphalt portion of the road extends for nine feet on each side of the center line of the road.

Without objection Leola Menefield testified that on two or three occasions in the month of April 1956, as she would be walking along the public road by appellant's place, the appellant would be "down by his pasture" with his private parts out.

On cross examination the defense was permitted wide latitude in showing any possible bias that this witness might harbor toward appellant, and further that she had not told anyone of appellant's alleged conduct until after her husband had accompanied the sheriff and appellant to Mrs. Meadows's home for identification.

The evidence presented by the defense was directed toward establishing an alibi, in that the appellant was allegedly driving a school bus at the times in question.

A number of pupils who rode the school bus, some of the teachers at the school, and appellant's wife were used as witnesses for the purpose of establishing the alibi. It should be noted that, except for appellant's wife, none of these witnesses saw the appellant before 7:15 or 7:30 on the mornings in question. No testimony was elicited as to the distances between appellant's home and the places at which the alibi witnesses boarded the bus. Thus under the testimony of all these witnesses, except that of appellant's wife, there is a lapse of some 25 to 40 minutes between the time he allegedly exposed himself and the time he was seen by the alibi witnesses.

Furthermore, the direct testimony of a number of these alibi witnesses was seriously questioned upon their cross examination.

Regardless, the contradiction between the evidence presented by the State and that presented by the defense merely raised a question of fact within the province of the court below to resolve. Certainly, the evidence presented by the State is ample in its tendencies to support the judgments rendered.

Rulings by the court were invoked relatively few times in the trial below. In a preponderant number of such instances the court ruled in appellant's favor. In the remaining instances the court's rulings were so patently correct and based on such elemental principles that no discussion is indicated. The learned trial judge was most careful in protecting every possible right to which this accused was entitled.

The record in this case was filed in this court on 15 November 1956.

On 26 November 1956 the Attorney General filed a motion for leave or permission to file a motion in the Circuit Court of Randolph County to correct nunc pro tunc the judgments appearing in the record.

The motion set forth that judgment entries appearing in the record were bench notes; that it appeared that the record contained other bench notes; and that other record evidence in the Circuit Court of Randolph County afforded a basis for the entry of formal judgments.

It was certified that a copy of the motion had been mailed, properly stamped and addressed, to counsel for appellant.

Under the provisions of Sections 566 and 567, Title 7, Code 1940, the motion of the Attorney General was granted. See also Turner v. State, 266 Ala. 250, 96 So.2d 303.

Thereafter, and apparently after the nunc pro tunc proceedings below, the Attorney General moved on 29 January 1957 for a writ of certiorari to correct the record in respect to the judgments.

The writ was issued by this court, and the corrected judgments, dated 22 January 1957, under the seal of the clerk below, were filed in this court on 13 February 1957.

These judgments are regular in every respect.

The writ of certiorari was issued under the provisions of Supreme Court Rule 18 Code 1940, Tit. 7 Appendix and the doctrine of innumerable cases to be found under ☞ Nos. 659(1), 659(2), Alabama Digest, Vol. 2, Appeal and Error.

■ In his brief counsel for appellant argues that "at Dadeville, Alabama, on the 6th day of February, 1957, when the records and transcript had been duly transferred back to the lower court arguments were had and Constitutional questions were raised as to the violation of due process and equal protections of the laws as well as the civil liberties of the appellant as well as form of (sic) jeopardy. A copy of said proceeding is attached hereto and made a part of the records. These proceedings violated the Fourteenth Amendment to our United States Constitution as well as the constitutional guarantees set out by the laws of the State of Alabama."

No copies of any proceedings at Dadeville were attached to the brief, nor could these ancillary proceedings have been presented for our review in this manner had they been attached to the brief. This aside, it is clear that in the record presented to us there is nothing for us to review in this aspect.

It is our conclusion that each of the judgments involved in this appeal is due to be affirmed, and it is so ordered.

Affirmed.